

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI STATE CONFERENCE )   *Opinion issued June 23, 2020*
of the NATIONAL ASSOCIATION )
for the ADVANCEMENT of )
COLORED PEOPLE, *et al.,* )
 )
          Appellants, )
 )
v. )   No. SC98536
 )
STATE of MISSOURI, *et al.,* )
 )
          Respondents. )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

PER CURIAM

The Missouri State Conference of the National Association for the Advancement of Colored People, the League of Women Voters of Missouri, Javier A. Del Villar, Kamisha D. Webb, and Cecil E. Wattree ("petitioners") appeal the circuit court's dismissal of their petition for declaratory judgment and injunctive relief for failure to state a claim upon which relief could be granted. In four counts, petitioners sought injunctive and declaratory relief with respect to Missouri's absentee voting statute, section 115.277. Petitioners abandoned count II on appeal; therefore, the circuit court's judgment with respect to count II is affirmed. Counts I, III, and IV of the petition state claims upon which relief could be

granted; therefore, the circuit court's judgment with respect to those counts is reversed, and the cause is remanded.

## Factual and Procedural Background

Prior to the signing of SB 631 on June 4, 2020, Missouri had no vote-by-mail system available to all registered voters. Missouri's only mechanism for non-in-person voting was the absentee voting procedure set out in section 115.277, but that procedure was available to only a subset of registered voters. Only those registered voters with the circumstances set forth in section 115.277.1(1)-(6) could vote absentee. And, under the provisions in section 115.277, most registered voters with one of the enumerated circumstances would have needed to have their absentee ballots acknowledged in person before returning them by mail. All other voters had to physically appear at their designated polling places on an election day to vote.

In response to the severe acute respiratory syndrome coronavirus 2 (COVID-19) pandemic and the upcoming August primary and November general elections, on April 17, 2020, petitioners filed a four-count petition for injunctive and declaratory relief in the Cole County circuit court. Due to the transmissibility of COVID-19 through person-to-person contact, petitioners sought injunctive and declaratory relief to secure the ability to exercise their constitutional right to vote – but to do so without leaving their homes to reduce the risk of contracting or spreading COVID-19 during the process.[1]

---

[1] Petitioners' petition also alleged bilateral class resolution of this case was appropriate, proposing both plaintiff and defendant classes. Dismissal of these claims has not been raised on appeal.

Petitioners' count I sought a declaration that the authorization in section 115.277.1(2), which permits any registered Missouri voter to vote absentee without notarization if they are unable to vote in person due to confinement due to illness or disability, applies to persons who are confining themselves at home due to COVID-19.[2] Count II sought a declaration that the inconsistent interpretation of section 115.277.1(2) by local election authorities regarding whether it authorizes such voters to vote absentee by mail without notarizing their ballots violates the Equal Protection Clause of the Missouri Constitution.[3] Count III sought a declaration that allowing some, but not all, voters to vote absentee by mail violates the right to vote provided by the Missouri Constitution.[4]

Finally, count IV sought a declaration that, in the same situation, allowing some voters to vote absentee by mail without notarization but requiring others to obtain in-person notarization imposes costs of obtaining notarization that other voters need not face and violates the right to vote provided by the Missouri Constitution.[5] Petitioners' objective under Count IV was to secure for all registered Missouri voters the ability to vote by mail

---

[2] In count I, petitioners sought injunctive relief in two respects. First, they sought to enjoin enforcement of section 115.277.1(2) to the extent it would prohibit, punish, or discourage persons who are confining themselves to vote from home to avoid contracting or spreading COVID-19 from casting an absentee ballot without notarization. Second, petitioners sought to enjoin all Missouri local election authorities from refusing to accept absentee ballots without notarization cast pursuant to this provision.

[3] In count II, petitioners also sought to enjoin interpretation, application, or enforcement of section 115.277.2(2) in a manner that deprives any voter of the opportunity to vote absentee by mail when they would be permitted to vote absentee by mail if they resided elsewhere in the state.

[4] In count III, petitioners also sought to enjoin the state and anyone acting in concert with the state from limiting the availability of absentee voting.

[5] In count IV, petitioners also sought to enjoin the state and anyone acting in concert with the state from limiting the availability of absentee voting without notarization.

without the risks of contracting and spreading COVID-19 through the notarization or in-person voting process and without the costs, including time and transportation, required to obtain in-person notarization of a mail-in or absentee ballot. On appeal, petitioners have clarified they seek the requested relief only for the August 2020 primary and November 2020 general elections due to the COVID-19 pandemic.

The state did not file an answer to the petition. Rather, on May 5, 2020, the state filed a motion to dismiss the petition under Rule 55.27(a)(6), claiming petitioners had failed to state any claims upon which relief could be granted. The circuit court took up the motion and, after concluding petitioners were not entitled to the declarations (and related relief) they sought, sustained the motion to dismiss as to all counts on May 18, 2020.[6] Petitioners appeal the dismissal of Counts I, III, and IV, but have abandoned their claim in Count II. This Court has exclusive appellate jurisdiction owing to the constitutional challenges to section 115.277 in Counts III and IV. Mo. Const. art. V, § 3.[7]

### Recent Developments

Before turning to the merits of petitioners' appeal, this Court must outline important developments: the passage and signing into law of Senate Bill No. 631 and the passage of House Bill No. 1655. On May 15, 2020, the legislature truly agreed and finally passed SB 631 with an emergency clause providing the bill would become effective immediately

---

[6] In doing so, the circuit court also found petitioners' class allegations were legally deficient and the institutional petitioners lacked standing.

[7] Nor do petitioners appeal the circuit court's denial of class certification. Petitioners do appeal the circuit court's finding that the institutional petitioners lacked standing; however, for the reasons set forth below, petitioners state a claim, it is unnecessary for this Court to address that issue.

"upon its passage and approval." SB 631, 100th Gen. Assemb., § B (2020). SB 631 repeals and replaces section 115.277, providing for expanded absentee and mail-in voting for the remaining 2020 elections. SB 631 reenacts section 115.277 with language identical to that of the former statute, except it adds new sections 115.277.1(7) and 115.277.6 pertaining to elections held during 2020.

Specifically, for the remainder of 2020, section 115.277.1(7) authorizes any voter who has "contracted or is in an at-risk category for contracting" COVID-19 to vote by absentee ballot. At-risk voters are defined in new section 115.277.6 as:

> For purposes of this section, the voters who are in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2 are voters who: (1) Are sixty-five years of age or older; (2) Live in a long-term care facility licensed under chapter 198; (3) Have chronic lung disease or moderate to severe asthma; (4) Have serious heart conditions; (5) Are immunocompromised; (6) Have diabetes; (7) Have chronic kidney disease and are undergoing dialysis; or (8) Have liver disease.

SB 631, 100th Gen. Assemb., § 115.277.6 (2020). Such at-risk voters are authorized to vote absentee by mail in any election during 2020 *without* having their signatures on their ballot envelopes acknowledged[8] by a notary or other official authorized by law to administer oaths. *Id.* § 115.283.8; §115.291.1.

SB 631, in newly adopted section 115.302.1, further authorizes all registered Missouri voters to cast a mail-in ballot in any election held in 2020, provided the ballot is

---

[8] "Acknowledge," as used in this opinion, describes the act of a notary or other officer – authorized by law to administer oaths – of acknowledging that a person voting an absentee ballot or a mail-in-ballot subscribed and swore to the statement on the ballot envelope, as required by section 115.291.1 (for certain absentee ballots) and section 115.302 (for mail-in-ballots).

acknowledged as provided in sections 115.302.11 and 115.291.1. In other words, SB 631 authorizes all registered voters to vote by mail with their signatures on the ballot envelopes so long as the signatures are acknowledged by a notary or other person authorized to administer oaths. SB 631 further authorized a subset of at-risk registered voters, as that term is statutorily defined, to vote absentee by mail without such acknowledgement in the remaining 2020 elections. SB 631 was delivered to the governor May 27, 2020, and signed into law June 4, 2020, becoming immediately effective on that day.

The legislature also passed a separate bill, HB 1655, which authorizes many notarial acts to be done remotely, without the need to appear personally before the notary, with certain requirements and potential notary fees and costs.[9] Section 442.145.1.

The governor has not yet signed HB 1655 into law. Because HB 1655 does not contain an emergency clause, if signed, it will not take effect until August 28, 2020. The governor issued Executive Order 20-08 on April 6, 2020, and, since the circuit court's decision in this matter, has extended that order to August 28, 2020.[10] Pursuant to the

---

[9] Pursuant to section 486.1115 set out in HB 1655, a notary must utilize software approved by the Secretary of State for remote online notarial acts which would allow the notary to create an audio and video recording of the performance of a notarial act. Under HB 1655, section 486.1195.2 would require those audio and video recordings to be maintained for at least ten years. Although section 486.685.5 would prohibit a notary from charging a fee "for notarizing the signature on any absentee ballot," section 486.1160 contained in HB 1655 would authorize a notary and a person requesting a notarial act to agree in advance for payment of "a remote online notary transaction fee . . . [that] is separate from the notarial fee prescribed in subsection 2 of section 486.960," which sets maximum fees that can be charged for performing many electronic notarial acts. Thus, it is unclear what, if any, costs and fees may accompany a remote notary service.

[10] See Mo. Const. art. III, § 29 (providing, "No law passed by the general assembly, except an appropriation act, shall take effect until ninety days after the adjournment of the session

6

governor's emergency authority under sections 44.100, RSMo Supp. 2009, and 44.110, RSMo 2000, Executive Order 20-08 suspends the requirement of personal appearance before a notary due to health concerns raised by COVID-19. The order further authorizes notarizations to take place via "audio-video technology." Executive Order 20-08's authorization of remote notarizations, therefore, will be effective during the absentee ballot period for the August 2020 primary election. It has not been extended to include the November 2020 general election, although HB 1655, if signed, would be effective during the absentee and mail-in ballot period preceding the November 2020 general election.

## Standard of Review

"This Court reviews a circuit court's sustaining of a motion to dismiss *de novo*." *Mitchell v. Phillips*, 596 S.W.3d 120, 122 (Mo. banc 2020).

> A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition. When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader.

*Id.* at 122-23.

## Petition States Claims for Relief

A motion to dismiss does not permit the circuit court – or this Court on appeal – to determine the merits of a claim. Instead, the proper inquiry on a motion to dismiss "is solely a test of the adequacy of the petition." *Id.* at 122. In other words, the claimant

---

. . . at which it was enacted").

merely must allege facts sufficient to state a cognizable cause of action. To state a claim for a declaratory judgment:

> [T]he court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, . . . ; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 25 (Mo. banc 2003). Absent from these elements is any suggestion that the party seeking a declaratory judgment fails to state a claim upon which relief can be granted if that party will not – on the merits – be entitled to the declaration sought.

> *"The test of the sufficiency of a complaint for a declaratory judgment is not whether it shows that plaintiff is entitled to a declaration in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all. It follows that the complaint need not allege facts showing that plaintiff is entitled to a declaration in his favor, and a complaint which shows on its face that plaintiff is advancing an erroneous contention of law is not therefor insufficient."*

> We find no fault with that rule. In this case, if plaintiffs, in their petition, have stated facts upon which a court could base a judgment adjudicating the questions plaintiffs seek to settle, then the petition should be declared to be sufficient.

*Transp. Mfg. & Equip. Co. v. Toberman*, 301 S.W.2d 801, 805 (Mo. banc 1957) (quoting 26 C.J.S. *Declaratory Judgments* § 136). It simply cannot be stated any more clearly.

Petitioners' claims plainly meet the pleading requirements for any declaratory judgment cause of action and the largely similar requirements for actions seeking injunctive relief. The petitioners present a real, substantial, and presently existing controversy regarding the interpretation of Missouri's absentee voting statute. The

petitioners seek to protect their right to vote guaranteed by the Missouri Constitution, and, given the upcoming August and November elections, their claims are ripe for judicial determination. Aside from seeking declaratory judgment to determine their rights under Missouri's absentee voting statute, the petitioners have no adequate remedy under the law. Therefore, the petition sufficiently states claims for declaratory judgment.

The circuit court should have overruled the motion to dismiss and should not have undertaken any analysis of the merits of petitioners' claims in ruling on that motion. Because the merits of the petition were not before the circuit court on the state's motion to dismiss, the circuit court erred in entering a judgment on the merits. Therefore, the circuit court's judgment with respect to claims not abandoned on appeal must be reversed, and the cause remanded.

On remand, the parties and the circuit court can address the significant changes in circumstances that have occurred after the petition was filed and the judgment dismissing the petition was entered, i.e., the Governor's executive orders, the statutory changes in SB 631 that are now in effect, and the provisions of HB 1655, if signed by the Governor. Those changes may cause petitioners to abandon some original claims or seek leave of court to amend claims.

### Conclusion

The circuit court's judgment with respect to count II is affirmed. The remaining portions of the judgment are reversed, and the cause is remanded.

All concur.

9